(48 South. 312.)

No. 17,255.

STATE ex rel. BOARD OF SCHOOL DIRECTORS OF IBERIA PARISH v. ROMERO.

(Jan. 18, 1909.)

STATUTES (§ 5*)—MANDAMUS (§ 77*)—LEGISLATION GERMANE TO GOVERNOR'S CALL—GROUNDS OF RELIEF—PUBLIC OFFICERS.

The subjects legislated upon in Act No. 17, p. 19, of 1907 (Extra Session), are germane to the objects of legislation designated (in Nos. 1, 2, and 4) of the Governor's call, and it being the plain duty, under that act, of the parish treasurers, acting as treasurers of the school boards, to turn over to their successors, the parish superintendents of public schools, thereby made treasurers of such boards, the books, papers, and vouchers pertaining to such offices, mandamus will lie to compel the performance of that duty.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 4; Dec. Dig. § 5;* Mandamus, Cent. Dig. § 165; Dec. Dig. § 77.*]

(Syllabus by the Court.)

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Mandamus by the State, on the relation of the Board of School Directors of Iberia Parish, against Adolph B. Romero. Judgment for relators, and defendant appeals. Affirmed.

Andrew Jackson Cammack, for appellant. Hacker & Muller and Weeks & Weeks, for appellees.

## Statement of the Case.

MONROE, J. Relators, including J. C. Ellis, allege that the latter was elected superintendent of the public schools of the parish of Iberia, and ex officio treasurer of the school board, under Act No. 17, p. 19, of the Extra Session of 1907, and has duly qualified. That, by virtue of said statute, he is the custodian of—

"all the books, accounts, vouchers, bank books, blank check books, and all other books, documents, papers and vouchers, belonging to the said office of treasurer."

That after he had qualified as treasurer, the school board caused the books and accounts of the former treasurer, Adolph B. Romero, to be audited, and demanded delivery thereof to said Ellis; which demand was refused, without just cause. That Romero, by virtue of his office of parish treasurer, was treasurer of the school board until February 1, 1908, at which date the statute mentioned became operative, and he

ceased to hold the office last mentioned, and ceased to have any right to the possession of the books, documents, and vouchers pertaining thereto, which are absolutely necessary to relators for the administration of the affairs of the public schools. Relators further allege that they are without other adequate remedy, and they pray for a writ of mandamus, directing said Romero to turn over said books, documents, etc., to them, and particularly to said Ellis.

Adolph B. Romero, made respondent, for answer says that he claims to be the legal incumbent of the office of treasurer of the school board, and that the proper method of testing his right thereto is by a proceeding under section 2593 of the Revised Statutes; that Act No. 17, p. 19, of 1907, is unconstitutional, for the reason that the call for the special session did not provide for such legislation; wherefore he prays, etc. The evidence shows that the relator, Ellis, is superintendent of education for the parish of Iberia, and that on February 19 and 24 (respectively), 1908, he took the oath and gave bond for the discharge of the duties of the office of treasurer of the school board of that parish. On April 30, 1908, the board authorized its president to take legal proceedings to recover from respondent the books, papers, and moneys of the board in his possession. Thereafter the attorneys employed for that purpose called on respondent, and, being given to understand that he would not surrender such books and papers, brought this suit. There was judgment in favor of relators in the district court, and respondent has appealed.

### Opinion.

Article 75 of the Constitution, authorizing the Governor to convene the General Assembly on extraordinary occasions, provides that:

"The power to legislate shall be limited to the objects specially enumerated in the procla-mation convening such extraordinary sessions. * * * Any legislative action * * * as to objects not enumerated in said proclamation, shall be null and void."

On October 25, 1907, the Governor issued a proclamation calling an extra session of the General Assembly, and designating 11 certain objects to be considered, and, among them, the following, to wit:

"(1) Reducing the salaries, fees and compensations of existing officers, putting officials on a salary basis, and converting, into the public treasury, fees and perquisites of office now enjoyed by incumbents of such offices. This to include, if necessary, the proposing of amendments to the Constitution.

"(2) Decreasing the revenues of the state and its political subdivisions, including costs of assessing property for purposes of taxation, and to this end, and in connection therewith, the abolition of unnecessary offices and the consolidation of existing offices, and, where necessary to accomplish this, proposing amendments to the Constitution."

"(4) Directing that the public funds be placed on deposit in the solvent bank, or banks, within the state, offering the highest compensation for such deposits, and making provision for properly safe-guarding the public interest by having such bank deposit, as security, in the state treasury, bonds of the state, or any political subdivision thereof, commanding par, or more, in the open market, equal in amount to the amount of funds placed on deposit with such bank, or banks, or otherwise."

The Lieutenant Governor (in the absence of the Governor) subsequently added two other objects to those enumerated in the original call, but they have no bearing upon the present question. When the original call was issued there was in force Act No. 214, p. 423, of 1902, which provided (section 65) that the parish treasurers should be the treasurers of the parish school funds, and that their compensation should be fixed by the school boards, and should not exceed 2½ per cent. of the amount disbursed by them respectively. When the General Assembly convened, in compliance with the call, it passed an act (No. 17) which provides that the superintendents of public schools in the different parishes (Orleans excepted) shall be the treasurers of the school funds, and that they shall receive "no com-

pensation whatever" for their services as such. It also provides that the—

"said treasurer shall deposit the school funds in such bank, or banks, as may be designated by the parish school boards, leaving to the school boards the right to select the bank that will pay the highest rate of interest on their deposits."

It further provides that it shall take effect from and after February 1, 1908.

Upon the trial in the district court, there was offered in evidence an excerpt from an editorial, published in a New Iberia paper, referring to an opinion said to have been given by the Attorney General upon the subject of the relation of the legislation thus adopted to the call of the Governor, and to article 75 of the Constitution, which excerpt reads, in part, as follows, to wit:

" * * * The following letter written by him [the Attorney General] * * * and addressed to a gentleman of this city is printed * * *. The name of the gentleman who received it is withheld by request:
" 'Dear Sir: * * * I thoroughly agree with you concerning the proposed system of disbursing the funds of the school board, * * * and believe that some more economical plan ought to be adopted. * * * It will be impossible, however, to have this matter taken up at the extra session, for the reason that the matter is not included in the call for the extra session, made either by the Governor or the Lieutenant Governor,' " etc.

This letter, as it appears, was not written in the discharge of any official duty, and whilst the able Attorney General gave to his correspondent the benefit of his opinion, as predicated upon the information then in his possession, it may be that, if he had been acting officially, his investigation would have led him to a different conclusion. At all events, we are unable to concur in the view expressed in the letter, and are of opinion that the consolidation of the offices of superintendent of public schools and treasurer of the school boards, and the requirements that such treasurer shall receive no compensation, and shall deposit the school funds in the bank or banks, to be designated by the school boards, paying the highest rate of interest on their deposits, is legislation which is germane to the objects (heretofore mentioned) designated in the call of the Governor. It is true that the General Assembly itself seems to have entertained some doubt upon the subject, since, at the regular session of 1908, p. 348, it passed an act, No. 232, in the same language as Act No. 17, p. 19, of the Extra Session of 1907, so that the question here presented, from any point of view, really involves only the right of the respondent to act as treasurer of the school board from February 1, 1908, to, say, July 29, 1908 (at which latter date, Act No. 232, p. 348, of 1908, became operative in the parish of Iberia). For the reasons stated, however, we are of opinion that the act passed at the extra session is constitutional, from which it follows that respondent became functus officio, as treasurer of the school board, on February 1, 1908, and that it was his duty at that time to turn over to his successor the books and papers pertaining to that office. High on Extraordinary Legal Remedies, §§ 73, 306; 26 Cyc. p. 258; Hatch v. New Orleans, 1 Rob. 470.

The judgment appealed from is therefore affirmed.