679 So.2d 454 (1996)
In the Matter of ANGUS CHEMICAL COMPANY (Formerly International Minerals and Chemical Corporation).
Petition For Exemption From the Land Ban Disposal Regulations.
No. 94 CA 1148.
Court of Appeal of Louisiana, First Circuit.
June 26, 1996.
*455 Daria B. Diaz, Tulane Environmental Law Clinic, New Orleans, for appellants, Sierra ClubDelta Chapter, Louisiana Environmental Action Network and the Town of Sterlington.
Meredith Hoag Lieux and James B. Thompson, III, Baton Rouge, for appellee, Louisiana Department of Environmental Quality.
Maureen N. Harbourt, Baton Rouge, for appellee, Angus Chemical Company.
Before WATKINS, CARTER, LeBLANC, WHIPPLE and FOGG, JJ.
WHIPPLE, Judge.
Appellants, Sierra ClubDelta Chapter, Louisiana Environmental Action Network and the Town of Sterlington (collectively referred to as "the citizens groups"), challenge the decision of the Department of Environmental Quality (DEQ) granting an exemption to Angus Chemical Company ("Angus") from Louisiana's ban on the land disposal of hazardous waste.[1]
Angus filed a motion to dismiss this appeal, averring that pursuant to Act 41 of the First Extraordinary Session of 1996, this court lacks jurisdiction to hear the appeal.[2] At oral argument on May 23, 1996, the citizens groups indicated an intent to challenge the constitutionality of Act 41 in response to Angus' motion to dismiss the appeal.
The parties were given the opportunity to respond by brief to the issue of the constitutionality of Act 41. The citizens groups have responded by alleging that Act 41 is unconstitutional on two grounds: (1) the entire act is unconstitutional because the Governor's proclamation convening the Extraordinary Legislative Session in which the Act was passed did not specifically include the subject matter of the Act among the objects of the Session as required by article III, § 2(B) of the Louisiana Constitution of 1974; and (2) Section 2 of Act 41 is unconstitutional because its provision for the retroactive effect of the Act constitutes a legislative encroachment upon the powers of the judiciary in contravention of article II, §§ 1 and 2 of the Louisiana Constitution of 1974.
At the outset, we note that the constitutionality of Act 41 is challenged for the first time on appeal. While a litigant must generally attack the constitutionality of a *456 statute at the trial level before it will be considered by an appellate court, an exception to this general rule exists when the challenged statute becomes effective after an appeal is lodged in a higher court. In the Matter of Rubicon, Inc., 95-0108, p. 5 (La. App. 1st Cir. 2/14/96); 670 So.2d 475, 479. Under such circumstances, it would be unreasonable for an appellate court to refuse to consider a plea of unconstitutionality which is raised of necessity for the first time on appeal. Thus, it is proper for this court to address the constitutionality of Act 41 which became effective after the lodging of this appeal.

CONSTITUTIONALITY OF ACT 41, FIRST EXTRAORDINARY SESSION OF 1996
In its 1996 First Extraordinary Session, the Louisiana Legislature enacted Act No. 41, effective May 7, 1996, to amend and reenact LSA-R.S. 30:2050.18, 2050.21 and 2050.22 and to enact LSA-R.S. 30:2050.30 and 2050.31. Specifically, LSA-R.S. 30:2050.21 was amended to grant the Nineteenth Judicial District Court jurisdiction of appeals of final permit actions, final enforcement actions and declaratory actions. Pursuant to section 1 of Act 41, the Legislature also enacted LSA-R.S. 30:2050.31, which provides that a final judgment of the Nineteenth Judicial District Court may be appealed to this Court. Additionally, Section 2 of Act 41 provides that "[t]he provisions of this Act shall be procedural law in accordance with Civil Code Article 6 and shall apply to all cases in which a decision has not been rendered on appeal as of the effective date of this Act."
There is a strong presumption that legislative actions are constitutional. Only where the statute is clearly repugnant to the constitution will it be stricken. Doherty v. Calcasieu Parish School Board, 93-3017 (La. 4/11/94); 634 So.2d 1172, 1174. The Louisiana Legislature may enact any legislation that the state constitution does not explicitly prohibit. Thus, in order to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature. Polk v. Edwards, 626 So.2d 1128, 1132 (La. 1993).
The party challenging the constitutionality of a statute bears the burden of proving clearly that the legislation is invalid or unconstitutional. Specifically, the party must rely upon a constitutional provision which restricts the power of the legislature to enact the particular legislation and must establish that the legislation is barred by such provision. Any doubt as to the legislation's constitutionality must be resolved in favor of constitutionality. Polk, 626 So.2d at 1132.

Specific Enumeration Requirement
The citizens groups first challenge the constitutionality of Act 41 on the basis that the Act violates article III, § 2(B) of the Louisiana Constitution of 1974. Article III, § 2(B) authorizes the governor to convene the legislature in an extraordinary session, and provides, in pertinent part as follows:
At least five days prior to convening the legislature in extraordinary session, the governor or the presiding officers, as the case may be, shall issue a proclamation stating the objects of the session, the date on which it shall convene, and the number of days for which it is convened. The power to legislate shall be limited, under penalty of nullity, to the objects specifically enumerated in the proclamation. (Emphasis added).
Among the objects enumerated in Governor M.J. Foster, Jr.'s proclamation convening the First Extraordinary Session of 1996 was Item 41, which listed the following object of the session: "To legislate relative to administrative procedures, to provide for the effect of a decision by an administrative law judge, the agencies affected by said law, and jurisdiction for appeals thereafter; and otherwise to provide with respect thereto."
The citizens groups aver that because Item No. 41 does not specifically mention: (1) LSA-R.S. 30:2050.18, 2050.21, 2050.22, 2050.2030 or 2050.31; (2) the Department of Environmental Quality; (3) the First Circuit Court of Appeal, the Nineteenth Judicial District Court or a shift of jurisdiction from one *457 to the other; or (4) bond requirements, Item No. 41 fails to specifically enumerate the subject matter legislated in Act 41. Thus, they contend that the legislature exceeded its authority by passing Act 41 of the First Extraordinary Session of 1996, and argue that this court must declare the Act null and void.
Article III, § 2(B) of the Louisiana Constitution requires that the governor issue a proclamation five days prior to the extraordinary session, and that the proclamation set forth: (1) the objects of the session, (2) the date on which the session shall convene and (3) the number of days for which it is convened. Further, the power of the legislature to legislate in an extraordinary session is limited to "objects specifically enumerated" in the proclamation.
Our research has not revealed any jurisprudence interpreting this specific constitutional provision. However, in State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72 (La.1935), the Louisiana Supreme Court interpreted the provision of the 1921 Constitution from which article III, § 2(B) of the 1974 Constitution was derived. In Porterie, the constitutionality of Act 22 of the Third Extraordinary Session of 1934 was attacked on the basis that the object or subject matter was not specifically enumerated in the governor's proclamation for the session and, thus, was enacted in violation of article V, § 14 of the Louisiana Constitution of 1921.
Article V, § 14 of the Louisiana Constitution of 1921 provided as follows, with regard to the legislature's authority to legislate in an extraordinary session: "The power to legislate, under the penalty of nullity, shall be limited to the objects specially enumerated in the proclamation of the Governor...." Thus, with the adoption of the Louisiana Constitution of 1974, the relevant phraseology was changed from "specially enumerated" to "specifically enumerated." However, the committee report of the Constitutional Convention of 1973 states that this provision had been reworded "without substantive change." Committee Report with Respect to Committee Proposal No. 3, § 2 Comment, 1 Official Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana at 88.
Moreover, we note that "special" is defined as "dealing with particulars" and "specific." "Specific," on the other hand, is defined as "having a special application, bearing, or reference" and "specifying, explicit, or definite." Webster's Encyclopedic Unabridged Dictionary of the English Language 1365, 1366 (1989). We find no meaningful distinction in the use of these words for the purposes of our discussion.
Thus, while the Supreme Court's decision in Porterie dealt with the language of the 1921 Constitution, inasmuch as article III, § 2(B) of the 1974 Constitution was adopted from article V, § 14 of the 1921 Constitution without any substantive change, we conclude the Supreme Court's pronunciations in Porterie are applicable to the present case. See State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197, p. 10 n. 6 (La. 9/5/95); 660 So.2d 1189, 1196 n. 6.
In Porterie, the Supreme Court specifically addressed the requirements of a proclamation for an extraordinary session, stating as follows:
Section 14 of article 5 of the Constitution [of 1921] does not require that the object of the act, as if stated in its title, or that the subject-matter of the act, as if enacted, shall be stated in detail in the call, but merely requires that "the objects" or subjects to be legislated upon shall be designated therein, and such "objects" or subjects may be general. (Emphasis added).
State ex rel. Porterie, 166 So. at 76. The Court further pointed out that the details of the legislation at issue were beyond the control of the governor and were within the discretion of the legislature. State ex rel. Porterie, 166 So. at 76. This holding, that the object listed in the governor's proclamation may be stated in general terms, is consistent with subsequent pronouncements by the Supreme Court. In Airey v. Tugwell, 197 La. 982, 3 So.2d 99, 102 (1941), the Supreme Court defined the "object of a law" in the context of the "one object" and "indicative title" requirements of article III, § 16 of the 1921 Constitution as "the aim or purpose *458 of the enactment" and "its general purpose." (Emphasis added).
Thus, we conclude, in accordance with the pronouncements of the Supreme Court, that although the proclamation convening the extraordinary session must specifically enumerate each object that is to be considered by the legislature, the individual objects listed may be stated in general terms. La. Const. art. III, § 2(B); State ex rel. Porterie, 166 So. at 76.
Moreover, we likewise conclude that Act 41 is germane to the general object set forth in Item No. 41 of the proclamation. Act 41 has the effect of transferring appellate jurisdiction to review final permit actions, final enforcement actions and declaratory actions of the DEQ in the first instance from this court to the Nineteenth Judicial District Court. Clearly this is legislation germane to the object of "legislat[ing] relative to administrative procedures, to provide for the effect of a decision by an administrative law judge, the agencies affected by said law, and jurisdiction for appeals thereafter," as designated in Item No. 41. See generally State ex rel. Board of School Directors of Iberia Parish v. Romero, 122 La. 885, 48 So. 312 (1909).
Thus, we find no merit to the citizens groups' argument that Act 41 violates the specific enumeration requirement of article III, § 2(B) of the Louisiana Constitution of 1974.

Separation of Powers Argument
The citizens groups also argue that section 2 of Act 41 is unconstitutional because its provision for the retroactive effect of the act constitutes a legislative encroachment upon the powers of the judiciary in contravention of article II, §§ 1 and 2 of the Louisiana Constitution. Article II, § 1 of the Louisiana Constitution provides that "[t]he powers of government of the state are divided into three separate branches: legislative, executive, and judicial." Article II, § 2 dictates that "[e]xcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." The citizens groups contend that pursuant to article II, the legislature cannot undertake any act "that disrupts the ongoing adjudications of the courts." They further contend that because this Court has already perfected its jurisdiction over this appeal, the legislature, in giving Act 41 retroactive effect, has overstepped the limits of its own powers of government, by impeding the judiciary's exercise of its powers and frustrating the judiciary's fulfillment of its responsibilities. Thus, the citizens groups argue, section 2 of Act 41 is unconstitutional.
Article II is violated only if one branch of government, or its members, exercises power belonging to either of the others. State in the Interest of A.C., 93-1125, pp. 17-18 (La. 1/27/94); 643 So.2d 719, 731, on rehearing, 93-1125 (La. 10/17/94); 643 So.2d 743, cert. denied, ___ U.S. ___, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995). We first note that the 1974 Louisiana Constitution permits the legislature to provide for appellate jurisdiction in the district courts. La. Const. art. V, § 16(B); In the Matter of American Waste & Pollution Control Co., 588 So.2d 367, 371 (La.1991). Moreover, the retroactive application of Act 41 to cases pending before this Court does not encroach upon any powers granted to this Court by the Constitution. Pursuant to article V, § 10(A) of the Louisiana Constitution, this Court is vested with appellate jurisdiction over "civil matters." However, the Louisiana Supreme Court has held that determinations by the DEQ are not "civil matters," because waste disposal and water discharge permitting have never been delegated in the first instance to the judicial branch. Thus, the legislature "may constitutionally repose such appellate review [of the DEQ's permitting actions] in the court of its choice." In the Matter of American Waste & Pollution Control Co., 588 So.2d at 373.
Moreover, this Court has previously upheld the retroactive application of legislation transferring appellate jurisdiction over certain DEQ actions from this Court. In In the Matter of American Waste and Pollution Control Company, 597 So.2d 1125, 1128-1129 (La.App. 1st Cir.), writs denied, 604 So.2d 1309, 1318 (La.1992), another panel of this Court upheld the retroactive application of Act 197 of the 1990 Ordinary Session, which divested this Court of appellate jurisdiction in the first instance over certain DEQ matters, stating as follows:

*459 Laws which determine jurisdiction are procedural laws which have been traditionally afforded retroactive application. Jurisdictional provisions apply, from the date of their promulgation, to all lawsuits, even to those which bear upon facts and acts of a prior date and to pending lawsuits. The provision vesting jurisdiction in the trial court to review DEQ's action is clearly a procedural one since it prescribes a method of enforcing a right of judicial review of an administrative decision which previously existed.... Therefore, we conclude that the portion of the amendment which vests subject matter jurisdiction over the issues raised in this appeal may be applied retroactively. (Emphasis added) (Citations omitted).
We, therefore, find no merit in the citizens groups' contention that section 2 of Act 41, which provides for retroactive application of the act, is an unconstitutional encroachment by the legislature upon the powers of the judiciary.

CONCLUSION
Finding no merit in the constitutional challenges to Act 41 raised by the citizens groups, we conclude that the amendment of LSA-R.S. 30:2050.21 applies herein and requires transfer of the appeal to the Nineteenth Judicial District Court.[3]
Accordingly, it is ORDERED, ADJUDGED AND DECREED that this appeal be transferred to the Nineteenth Judicial District Court pursuant to LSA-R.S. 30:2050.21, as amended by Act 41 of the First Extraordinary Session of 1996, effective May 7, 1996. Costs of this appeal are to await final disposition of this matter.
APPEAL TRANSFERRED TO THE NINETEENTH JUDICIAL DISTRICT COURT.
NOTES
[1] Four additional citizens groups, Concerned Citizens of Northeast Louisiana, League of Women VotersLouisiana, GreenpeaceNew Orleans and Louisiana Coalition for Tax Justice, were dismissed from this appeal by earlier order of this court.
[2] Although Angus seeks to have this appeal dismissed, the more appropriate action would be for this Court to transfer the appeal to the Nineteenth Judicial District Court. LSA-C.C.P. art. 2162; In the Matter of American Waste and Pollution Control Company, 597 So.2d 1125, 1126 (La.App. 1st Cir.), writs denied, 604 So.2d 1309, 1318 (La.1992).
[3] The citizens groups also request that, in the event that it is determined that this appeal must be transferred, this Court issue an order commanding the Nineteenth Judicial District Court to give expedited treatment to DEQ appeals transferred by this Court. See LSA-C.C.P. art. 2162. However, we decline to issue such an order, finding that a motion for expedited treatment is more appropriately directed to the trial court.